IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

FILED
IN OPEN COURT

AUG 10 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAE Y. JANG,<br>(Counts 1, 3, 4, 5, 7, and 8)<br><br>AND<br><br>KAREN J. DEMATTEO<br>(Counts 1, 2, 6, and 7)<br><br>*Defendants.* | Case No. 1:25-CR-258<br><br>Count 1: 18 U.S.C. § 1349 (Conspiracy to Commit Wire and Bank Fraud)<br><br>Counts 2-6: 18 U.S.C. § 1344 (Bank Fraud)<br><br>Count 7: 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)<br><br>Count 8: 18 U.S.C. § 1957 (Unlawful Monetary Transaction)<br><br>**Forfeiture Notice** |

INDICTMENT
September 2025 Term – at Alexandria, Virginia

**COUNT ONE**
**(Conspiracy to Commit Wire and Bank Fraud)**

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment

1.      Defendant TAE Y. JANG ("the defendant" or "JANG") resided and worked in Nokesville, Virginia, which was within the Eastern District of Virginia, among other places.

2.      Defendant KAREN J. DEMATTEO ("the defendant" or "DEMATTEO") resided and worked in Haymarket, Virginia, which was within the Eastern District of Virginia, among other places.

1

3. Since approximately 2013, JANG and DEMATTEO had been business partners who purchased and renovated real estate properties in and around Virginia, Maryland, and Washington, D.C.

4. JANG and DEMATTEO shared ownership of numerous companies, including but not limited to T&B Capital, LLC; T&B Construction Service Company, LLC; 3808 Mount Atlas Lane, LLC; Amartin Development, LLC; TK United Investments, LLC; and TK Holdings, LLC.

5. DEMATTEO was the sole owner of the company KCap LLC.

6. As further described below, JANG and DEMATTEO submitted EIDL and PPP loan applications for their companies to lenders, including financial institutions such as Bank A, and the Small Business Administration ("SBA").

7. Bank A operated throughout the United States and Canada, including in the Eastern District of Virginia. The deposits of Bank A were insured by the Federal Deposit Insurance Corporation. As such, Bank A was a financial institution within the meaning of 18 U.S.C. § 20.

8. Bank B operated in the mid-Atlantic region of the United States, including in the Eastern District of Virginia. The deposits of Bank B were insured by the Federal Deposit Insurance Corporation. As such, Bank B was a financial institution within the meaning of 18 U.S.C. § 20.

9. Bank A was the bank that initially funded many of the fraudulent PPP loans applied for by JANG and DEMATTEO. Many of JANG and DEMATTEO's companies also held accounts at Bank A.

10. JANG and DEMATTEO's company, TB United Investments LLC, held an account at Bank B.

*The EIDL Program*

11. In response to the economic crisis caused by the coronavirus pandemic, the SBA

made government-guaranteed loans available to qualified small businesses through the Economic Injury Disaster Loan ("EIDL") program. The purpose of EIDLs was to enable small businesses to meet financial obligations and operating expenses in light of the pandemic. To qualify for an EIDL, an applicant had to meet certain criteria, including, among other things, that it was in operation prior to the pandemic, and had regular operating expenses, which the applicant would have paid if not for the pandemic.

12. EIDL loan applications were submitted directly to the SBA and processed by the agency. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

13. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debt, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

14. The SBA used the FMS computer servers in Sterling, Virginia, within the Eastern District of Virginia, to receive repayment for EIDL loans.

*The PPP Program*

15. Also, in response to the economic crisis caused by the novel coronavirus pandemic, in or around March 2020, Congress made government-guaranteed loans available to qualified small businesses through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees. Eligible businesses seeking a loan under the PPP could apply for such a loan through a federally insured depository institution. To qualify for

3

a loan under the PPP, an applicant had to meet certain criteria, including, among other things, that it was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on an IRS Form 1099-MISC. Moreover, the amount of the loan that could be approved under the PPP and implementing regulations typically was a function of the applicant's historical payroll costs.

16. Small businesses applied for PPP loans with private lenders, including financial institutions such as Bank A, that had been approved to participate in the program by the SBA. When lenders decided that applications were ready for approval, the lenders sent electronic communications to the SBA E-Tran computer server in Sterling, Virginia, in the Eastern District of Virginia, containing data from and related to the applications, including the identities of the applicants and the amounts of the proposed loans. The SBA E-Tran server processed the applications electronically. The SBA also used the E-Tran server to send return communications to notify lenders that loans could be funded as part of the PPP program. Specifically, the SBA used the E-Tran server to send an SBA loan number for the lender to use when making the PPP loan. The lenders used their own funds to make the PPP loans, but the loans were guaranteed 100 percent by the SBA.

17. Bank A received PPP loan applications through Canadian based servers.

18. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments (but not mortgage prepayments or principal payments), rent payments, utility payments, interest payments on debt obligations that were incurred before February 15, 2020, or for refinancing certain specified SBA loans. The proceeds of a PPP loan were not permitted to be used to purchase new pieces of real property or to fund the borrower's day-to-day living expenses.

19. From at least in or around April 2020 through at least in or around March 2021, in the Eastern District of Virginia and elsewhere, the defendants

**TAE Y. JANG, and
KAREN J. DEMATTEO**

did unlawfully and knowingly combine, conspire, and agree with others both known and unknown to commit the following offenses against the United States, all in violation of 18 U.S.C. § 1349:

    a. Wire Fraud — that is, to knowingly devise and intend to devise a scheme and artifice to defraud lenders, including Bank A and the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

    b. Bank Fraud — that is, to knowingly devise and intend to devise a scheme and artifice to defraud financial institutions, including Bank A, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses, representations, and promises, moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution, in violation of Title 18, United States Code, Section 1344.

20. It was a purpose and object of the conspiracy for JANG and DEMATTEO to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent PPP and EIDL loan applications to financial institutions, including Bank A; (b) obtaining money or property – that is, PPP and EIDL loan proceeds of those same financial institutions, including Bank A; and (c) falsely promising to use the loan proceeds on permitted

business expenses under the PPP and EIDL.

### *Ways, Manner, and Means of the Conspiracy*

21. To achieve the purpose of the conspiracy and its unlawful objects, the defendants engaged in the following conduct within the Eastern District of Virginia and elsewhere:

22. The defendants would prepare, cause to be prepared, assist in the preparation of, submit, assist in the submission of, and cause to be submitted false and fraudulent EIDL and PPP loan applications (collectively referred to as the "COVID-19 relief loans"), that they would submit to lenders, including Bank A, and the SBA.

23. On the COVID-19 relief loan applications, JANG and DEMATTEO would materially inflate the numbers of employees each company had, falsify payroll expenses, and falsify gross revenues for each company. Further, JANG and DEMATTEO also falsely stated on the PPP applications that the applicant companies, nor the owners of the applicant companies owned or had a common management with other businesses. These statements on the COVID-19 relief loan applications were false, and JANG and DEMATTEO knew that they were false.

24. This false information was included in the loan applications to increase the amount of PPP and EIDL funds that the companies, JANG, and DEMATTEO were able to receive.

25. In an effort to gain more fraudulent funds, the defendants would sometimes file multiple loan applications for the same company, but the applications would list different numbers of employees for the companies. For example, on April 4, 2020, JANG submitted an EIDL application on behalf of T&B Construction Service Company, LLC claiming that the company had 25 employees. About four days later, DEMATTEO submitted a PPP loan application on behalf of T&B Construction Service Company, LLC claiming that the company employed 35 individuals. Similarly, on or about May 5, 2020, DEMATTEO submitted an EIDL application for T&B Capital,

LLC stating that the company had 10 employees. About six weeks later, JANG submitted a PPP application on behalf of the same company claiming that it employed 147 employees.

26. Other COVID-19 relief loan applications submitted by the defendants would list identical information for two different companies. Specifically, JANG and DEMATTEO submitted EIDL applications for T&B Construction Service Company, LLC and T&B Capital, LLC that contained the same amounts for gross revenues, and the amount of goods sold 12 months before January 31, 2020.

27. Knowing that the loan applications included false information, the defendants falsely certified and caused to be certified on each EIDL and PPP loan application that the information provided in the application and the information was true and accurate in all material respects.

28. The defendants' submission of fraudulent EIDL and PPP loan applications caused interstate wire transmissions. The defendants submitted multiple fraudulent loan applications to Bank A, which used a server located in Canada. Bank A then transmitted the loan applications to SBA's E-Tran server located in the Eastern District of Virginia.

29. The defendants knowingly prepared and submitted, assisted in the preparation and submission of, and caused to be prepared and submitted multiple fraudulent EIDL and PPP loan applications. The defendants would often electronically sign and submit the false EIDL and PPP loan applications over the Internet. Throughout the conspiracy, the defendants obtained thousands of dollars in proceeds from the fraudulent COVID-19 relief loans that contained material misrepresentations and attempted to obtain thousands of dollars more through other fraudulent COVID-19 relief loan applications, including several applications for second draws on PPP loans that were later denied.

30. Examples of the disbursements that Bank A and the SBA made to JANG and DEMATTEO's accounts as a result of the materially fraudulent misstatements are listed in the chart below.

| Approximate Application Date | Company | Approximate Amount | Loan Type |
|---|---|---|---|
| 4/4/2020 | T&B Construction Service Company, LLC | $150,000 | EIDL |
| 4/8/2020 | T&B Construction Service Company, LLC | $304,646 | PPP |
| 5/5/2020 | T&B Capital, LLC | $150,000 | EIDL |
| 5/5/2020 | 3808 Mount Atlas Lane, LLC | $150,000 | EIDL |
| 6/22/2020 | T&B Capital, LLC | $41,665 | PPP |
| 6/22/2020 | Amartin Development, LLC | $41,665 | PPP |
| 6/22/2020 | TK United Investments, LLC | $41,665 | PPP |
| 6/23/2020 | TK Holdings, LLC | $41,665 | PPP |

31. In the PPP applications, JANG and DEMATTEO also certified that all loan proceeds would only be used for authorized purposes. However, much of the PPP loan proceeds they received was not used for payroll but instead to transferred to their other companies and spent on impermissible expenses.

(All in violation of Title 18, United States Code, Section 1349).

## COUNTS TWO THROUGH SIX
### (Bank Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

32. The allegations contained paragraphs 1 through 31 of this Indictment are realleged and incorporated by reference as if set forth fully herein.

33. On or about the dates listed below, in the Eastern District of Virginia and elsewhere, defendants

**TAE Y. JANG, and**

**KAREN J. DEMATTEO**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud and to obtain the moneys, funds, credits, assets, or securities under the custody and control of the financial institutions, including Bank A, by means of the materially false and fraudulent pretenses, representations, and promises described below.

*Scheme and Artifice to Defraud*

34. The scheme and artifice to defraud described in paragraphs 19 through 31 of this Indictment is realleged and incorporated by reference herein.

*Executions of the Bank Fraud Scheme*

| Count | Defendant | Approximate Date | Description |
|---|---|---|---|
| 2 | **DEMATTEO** | April 8, 2020 | Fraudulently obtained $304,646 under the custody and control of Bank A by submitting a fraudulent PPP loan application on behalf of TB Construction Service Company, LLC |
| 3 | **JANG** | June 22, 2020 | Fraudulently obtained $41,665 under the custody and control of Bank A by submitting a fraudulent PPP loan application on behalf of T&B Capital, LLC |
| 4 | **JANG** | June 22, 2020 | Fraudulently obtained $41,665 under the custody and control of Bank A by submitting a |

| | | | |
|---|---|---|---|
| | | | fraudulent PPP loan application on behalf of Amartin Development, LLC |
| 5 | **JANG** | June 23, 2020 | Fraudulently obtained $41,665 under the custody and control of Bank A by submitting a fraudulent PPP loan application on behalf of TK United Investments, LLC |
| 6 | **DEMATTEO** | June 27, 2020 | Fraudulently obtained $41,665 under the custody and control of Bank A by submitting a fraudulent PPP loan application on behalf of TK Holdings, LLC |

(All in violation of Title 18, United States Code, Sections 1344(2) and 2.)

## COUNT SEVEN
### (Conspiracy to Commit Unlawful Monetary Transactions)

THE GRAND JURY FURTHER CHARGES THAT:

35. The allegations contained paragraphs 1 through 34 of this Indictment are realleged and incorporated by reference as if set forth fully herein.

36. From in or around April 2020 through at least in or around November 2021, in the Eastern District of Virginia and elsewhere, the defendants,

**TAE Y. JANG, and**

**KAREN J. DEMATTEO**

knowingly and intentionally combined, conspired, and agreed with each other and others known and unknown to the Grand Jury to knowingly engage in monetary transactions through a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity – namely, the substantive wire and bank fraud scheme as alleged in Counts 1 through 7 above – in violation of Title 18, United States Code, Section 1957.

*The Object of the Conspiracy*

37. It was the purpose and object of the conspiracy to launder and spend the proceeds of the COVID-19 relief loan fraud scheme through various financial transactions.

*The Manner and Means of the Conspiracy*

38. To achieve the object of the conspiracy, the defendants engaged in the following conduct in the Eastern District of Virginia and elsewhere:

39. After the fraudulently obtained COVID-19 relief loan funds arrived, the defendants would transfer large amounts of the fraud proceeds between their companies and to each other.

JANG and DEMATTEO would also withdrawal large amounts of the COVID-19 relief funds from their accounts.

40. At times, the defendants would spend large amounts of the fraud proceeds for certain purchases, including purchases of real property.

41. These transactions involved the proceeds of the wire and bank fraud schemes alleged above and were in excess of $10,000.

(All in violation of Title 18, United States Code, Section 1956(h)).

## COUNT EIGHT
### (Unlawful Monetary Transaction)

THE GRAND JURY FURTHER CHARGES THAT:

42. The allegations contained in paragraphs 1 through 41 above are realleged and incorporated by reference as if set forth here in their entirety.

43. On or about December 28, 2021, in the Eastern District of Virginia and elsewhere, the defendant TAE Y. JANG did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, in criminally derived property of a value greater than $10,000, in and affecting interstate or foreign commerce such property having been derived from a specified unlawful activity, that is, TAE Y. JANG transferred by wire $35,608, consisting of proceeds of the bank and wire fraud scheme described and alleged in Counts 1 through 6 of this indictment, from Bank B to Dream Title & Escrow to purchase a piece of real property located in Bowie, Maryland.

(In violation of Title 18, United States Code, Sections 1957 and 2)

## FORFEITURE NOTICE

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants **TAE Y. JANG** and **KAREN J. DEMATTEO** are hereby notified that, if convicted of any of the violations of 18 U.S.C. §§ 1349 and 1344 alleged in Counts 1 through 6 of this indictment, he or she shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his or her interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. §§ 1349 and 1344. If convicted of an offense alleged in Counts 7 and 8 of this indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense. The property subject to forfeiture under Counts 1 through 8 includes, but is not limited to, a sum of money equal to at least $941,006 in United States currency.

Pursuant to 21 U.SC. §853(p), the defendants shall forfeit substitute property, up to the value of the amount described above, if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with 18 U.S.C. §§ 981(a)(1)(C); 982(a)(1); 28 U.S.C. § 2461(c); 21 U.S.C. § 853(p).)

A TRUE BILL,

*Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office*

Foreperson

ERIK S. SIEBERT
UNITED STATES ATTORNEY

*/s/ Kathleen Robeson*

Kathleen E. Robeson
Assistant United States Attorney

14